[No. C000282. Third Dist. Nov. 23, 1987.]

ENTERPRISE INSURANCE COMPANY, Plaintiff and Respondent, v.
BERNARD JAMES MULLEAGUE, Defendant and Appellant.

COUNSEL

Kornblum, Kelly & Herlihy, Kornblum, McBride, Kelly & Herlihy William B. Boone and Harold I. Miller for Defendant and Appellant.

Martin, Crabtree, Schmidt & Zeff, Thomas D. Zeff and John W. Martin for Plaintiff and Respondent.

OPINION

**SPARKS, J.**—In this case we consider the statutory limits on uninsured motorist coverage. The issue turns on the proper construction of Insurance Code section 11580.2, subdivisions (a) and (m). We also address the question whether a statement of decision under Code of Civil Procedure section 632 is required when only an issue of law is tendered to the court in a bench trial.

Defendant Bernard James Mulleague claimed uninsured motorist benefits under a policy of insurance issued by plaintiff Enterprise Insurance Company (Enterprise). When the parties could not agree on the applicable limits of coverage, Enterprise filed a complaint for declaratory relief. The trial court entered a judgment holding that the applicable uninsured motorist limit was $15,000 for bodily injury to one person in one accident. Defendant appeals raising a number of procedural and legal issues. On the coverage question, he argues that the statutory provisions require that the coverage be equal to the limits of liability in the underlying policy, in this case $600,000. We reject both the trial court's and the defendant's construction of the statute. We conclude instead that the uninsured motorist benefits available to defendant are limited to $30,000 under the statute's plain and unambiguous language. (Ins. Code, § 11580.2, subds. (a), (m).) We will modify the judgment to so provide. We further hold that a statement of decision is not required when the only contested issue at trial presents a question of law. Finding no other error, we shall affirm the judgment as modified.

### FACTS

Although defendant complains of the manner in which the operative facts were presented to the trial court, the facts essential to resolution of this

dispute are both simple and undisputed. Defendant is employed by R. N. Sansome Trucking. Sansome Trucking purchased a motor vehicle insurance policy from Enterprise. The policy provides bodily injury liability insurance covering liability arising out of the ownership, maintenance and use of motor vehicles. It contains an endorsement providing uninsured motorist benefits. The endorsement provides uninsured motorist limits of $600,000 per person and $600,000 per accident. It further provides that uninsured motorist benefits are extended to cover any private passenger automobile owned by Sansome Trucking, and any commercial vehicles with a load capacity of 1,500 pounds or less. Although the policy provided liability coverage for commercial vehicles with a load capacity over 1,500 pounds, it did not expressly provide uninsured motorist coverage for such vehicles.

On March 20, 1984, while operating a commercial vehicle with a load capacity in excess of 1,500 pounds within the scope of his employment, defendant was involved in a collision with an uninsured motorist. Enterprise concedes defendant is entitled to claim legally mandated uninsured motorist benefits under the policy, but maintained in the trial court and originally on appeal that pursuant to Insurance Code section 11580.2 the limit of benefits available to defendant was $15,000. At oral argument Enterprise abandoned that contention and, while still arguing that the coverage was not $600,000, conceded that the benefits available to defendant were $30,000 rather than the $15,000 originally claimed. In light of this concession we permitted the parties to file supplemental briefs. Defendant continues to insist that he is entitled to benefits with a limit of $600,000. And there hangs the controversy.

## DISCUSSION

### I

■ A policy of insurance is a contract and the rights and liabilities of the parties ordinarily spring from their contractual relationship. (*Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9, 18 [123 Cal.Rptr. 288, 538 P.2d 744].) But in some circumstances the Legislature has statutorily imposed special duties upon insurers of motor vehicles. In such an instance the statutory provisions in effect at the time of issuance are read into the policy and become a part of the contract. (*Samson* v. *Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 231 [178 Cal.Rptr. 343, 636 P.2d 32]; *Robles* v. *California State Auto. Assn.* (1978) 79 Cal.App.3d 602, 608 [145 Cal.Rptr. 115].) ■ This is such a case. In the parties' contract of insurance Enterprise did not provide, and Sansome Trucking did not purchase, uninsured motorist coverage for persons driving a commercial vehicle in excess of 1,500 pounds load capacity. In spite of that omission,

Insurance Code section 11580.2 [all further statutory references are to the Insurance Code, unless otherwise indicated] imposes special obligations upon an insurer with respect to uninsured motorist coverage. Consequently, we must look to section 11580.2 to determine Enterprise's liability.

At the time Sansome Trucking purchased its policy of insurance section 11580.2, subdivision (a)(1), provided: "No policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle, except for policies which provide insurance in the Republic of Mexico issued or delivered in this state by nonadmitted Mexican insurers, shall be issued or delivered in this state to the owner or operator of a motor vehicle, or shall be issued or delivered by any insurer licensed in this state upon any motor vehicle then principally used or principally garaged in this state, unless the policy contains, or has added to it by endorsement, a provision with coverage limits at least equal to the limits specified in subdivision (m) and in no case less than the financial responsibility requirements specified in Section 16056 of the Vehicle Code insuring the insured, his heirs or his legal representative for all sums within such limits which he or they, as the case may be, shall be legally entitled to recover as damages for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle. The insurer and any named insured, prior to or subsequent to the issuance or renewal of a policy, may, by agreement in writing, in the form specified in paragraph (2), delete the provision covering damage caused by an uninsured motor vehicle (1) completely, or (2) delete such coverage when a motor vehicle is operated by a natural person or persons designated by name, or agree to provide such coverage in an amount less than that required by subdivision (m) but not less than the financial responsibility requirements specified in Section 16056 of the Vehicle Code. Any such agreements by any named insured or agreement for the amount of coverage shall be binding upon every insured to whom such policy or endorsement provisions apply while such policy is in force, and shall continue to be so binding with respect to any continuation, renewal, or replacement of such policy by the named insured, or with respect to reinstatement of such policy within 30 days of any lapse thereof. A policy shall be excluded from the application of this section if the only coverage with respect to the use of any motor vehicle is limited to the contingent liability arising out of the use of nonowned motor vehicles." (See Stats. 1982, ch. 736, § 2, pp. 2926-2927.)[1]

At all relevant times subdivision (m) of section 11580.2 has provided: "Coverage provided under an uninsured motorist endorsement or coverage

---

[1]Subdivision (a)(1) of section 11580.2 was further amended in 1983 and 1985. (See Stats. 1983, ch. 768, § 1, p. 2811 and ch. 1244, § 2.5, p. 4885; Stats. 1985, ch. 792, § 3.) None of these amendments alters the conclusion we reach in this case.

shall be offered with coverage limits equal to the limits of liability for bodily injury in the underlying policy of insurance, but shall not be required to be offered with limits in excess of the following amounts: [¶] (1) A limit of thirty thousand dollars ($30,000) because of bodily injury to or death of one person in any one accident. [¶] (2) Subject to the limit for one person set forth in paragraph (1), a limit of sixty thousand dollars ($60,000) because of bodily injury to or death of two or more persons in any one accident."

The effect of section 11580.2 is clear. Unless the insurer and the named insured execute a written waiver in the form prescribed by subdivision (a)(2) of section 11580.2, an insurance policy governed by its terms will be held to provide uninsured motorist coverage in the amounts mandated in that section. (*Hagar* v. *Elite Ins. Co.* (1971) 22 Cal.App.3d 505, 509 [99 Cal.Rptr. 423]; *Kincer* v. *Reserve Ins. Co.* (1970) 11 Cal.App.3d 714, 718-719 [90 Cal.Rptr. 94]; *Bohlert* v. *Spartan Ins. Co.* (1969) 3 Cal.App.3d 113, 118 [83 Cal.Rptr. 515].) This is true regardless of whether or not the policy purports to extend or to exclude uninsured motorist coverage. (*Kincer* v. *Reserve Ins. Co., supra,* 11 Cal.App.3d at p. 719; *Lopez* v. *State Farm Fire & Cas. Co.* (1967) 250 Cal.App.2d 210, 212 [58 Cal.Rptr. 243].) And it is so regardless of the fact the insurer failed to charge a premium for the coverage. (*Hagar* v. *Elite Ins. Co., supra,* 22 Cal.App.3d at p. 509; *Elipoulos* v. *North River Ins. Co.* (1963) 219 Cal.App.2d 845, 850 [33 Cal.Rptr. 449].)

Although the endorsement for uninsured motorist coverage in the Sansome Trucking policy did not extend (or purport to exclude) coverage for persons driving a commercial vehicle with a load capacity in excess of 1,500 pounds, Enterprise did not obtain a written waiver of uninsured motorist coverage in the form prescribed by statute. Accordingly Enterprise quite properly concedes that the Sansome Trucking policy extends uninsured motorist coverage to defendant. ██ ██ The only dispute here centers on the limits of the coverage provided to defendant by the statutory mandate. Enterprise maintained in the trial court, and the lower court agreed, that its liability was limited to $15,000, the amount imposed by the financial responsibility requirements contained in Vehicle Code section 16056.[2] Defendant insists that the policy provides coverage in the amount of $600,000, the bodily injury liability limits of the policy. As we read the clear and unambiguous language of section 11580.2, neither position has merit.

___

[2] Vehicle Code section 16056, subdivision (a), provides in relevant part: "No policy or bond shall be effective . . . unless the policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less that fifteen thousand dollars ($15,000) because of bodily injury to or death of one person in any one accident and, subject to such limit for one person, to a limit of not less than thirty thousand dollars ($30,000) because of bodily injury to or death of two or more persons in any one accident, . . ."

Prior to its amendment in 1980, section 11580.2 only required that a policy contain uninsured motorist coverage with "limits at least equal to the financial responsibility requirements specified in Section 16056 of the Vehicle Code . . . ." (Stats. 1979, ch. 1173, § 2, p. 4577.) Under this prior version, "the purpose of the uninsured motorist statute [was] not to make all drivers *whole* from accidents with uninsured drivers, but to make sure that drivers injured by such drivers [were] protected to the extent that they would have been protected had the driver at fault carried the statutory minimum of liability insurance." (*Pabitzky* v. *Frager* (1985) 164 Cal.App.3d 401, 403 [210 Cal.Rptr. 426], italics in original and fn. omitted.) In 1980, the Legislature expanded that coverage by adding subdivision (m) to section 11580.2 and by amending subdivision (a) to provide that the policy must contain "a provision with coverage limits at least equal to the limits specified in subdivision (m) . . . ." (Stats. 1980, ch. 1321, § 2, p. 4598.) Thus, the Legislature expanded the limits of uninsured motorist coverage beyond the limits imposed by the financial responsibility statute but only up to the increased limits contained in subdivision (m) of section 11580.2.

In claiming uninsured motorist benefits of $600,000 in his original brief, defendant impermissibly read only the first portion of subdivision (m) of section 11580.2, and ignored the remainder. He read in the first part of the statute that the coverage shall be "equal to the limits of liability for bodily injury in the underlying policy of insurance" and, finding it to his liking, stopped there. That reading violated Justice Frankfurter's three rules for mastering the meaning of a statute: "(1) Read the statute; (2) read the statute; (3) read the statute!" (Friendly, Benchmarks (1967) Mr. Justice Frankfurter and Reading of Statutes, p. 202.) ▇ From these rules, the precept of statutory construction is deducible that a statute must be read as a whole and so construed that each part is given effect. (Code Civ. Proc., § 1858; *Turner* v. *Board of Trustees* (1976) 16 Cal.3d 818, 826-827 [129 Cal.Rptr. 443, 548 P.2d 1115].)

▇▇ The first portion of the subdivision provides that benefits must be offered in the amount of the bodily injury liability limits of the policy, and in this case the bodily injury liability limits were $600,000. But the section does not end there and thus it does not follow that the mandated limits of the uninsured motorist benefits were $600,000. The second portion of subdivision (m) goes on to provide the maximum level of benefits the insurer is required to offer. If the Legislature had intended that the uninsured motorist benefits imposed by statute would be equal to bodily injury liability in all cases, it obviously would not have added this express limitation to the statutorily required benefits. Subdivision (m) clearly and unambiguously goes on to declare that an insurer is not required to offer or provide uninsured motorist benefits in excess of $30,000 per person and

$60,000 per accident. Construed as a whole, this statute means that uninsured motorist coverage must equal the limits of liability if those limits exceed the $15,000/$30,000 minimum required under the financial responsibility statute but only up to a maximum of $30,000 per person or $60,000 per accident. Thus, if the limits of liability in the underlying policy are $25,000 per person and $50,000 per accident, then the uninsured motorist coverage must equal those amounts. On the other hand, if the underlying limits were $100,000 and $200,000 respectively, then the statutorily mandated uninsured motorist coverage would be limited to $30,000 per person and $60,000 per accident. In short, the only plausible interpretation of the statute that gives effect to all of its terms is that where an insurer fails to obtain a written waiver of uninsured motorist coverage, the automobile insurance policy will then be construed by operation of law to provide uninsured motorist benefits in an amount equal to the bodily injury liability limits of the policy up to but not exceeding $30,000 per person and $60,000 per accident. In cases such as this where the statutorily imposed obligations are clear, we may not engage in forced construction or adopt an interpretation which imposes a requirement not contained in the statute. (*Borders* v. *Great Falls Yosemite Ins. Co.* (1977) 72 Cal.App.3d 86, 98 [140 Cal.Rptr. 33]; *Robinson* v. *State Farm Mut. Auto. Ins. Co.* (1972) 23 Cal.App.3d 953, 956-961 [100 Cal.Rptr. 565].)

Defendant now argues in his supplemental brief that the proper interpretation of the statute is that the uninsured motorist coverage must be equal to the liability limits but must be at least $30,000/$60,000 in any event, even if the liability limits are lower. This interpretation, he insists, is consistent with the requirement of liberal construction of insurance policies. But his construction is at odds with the statute. Defendant would stand the statute on its head by construing it to impose only a floor on coverage. But it imposes both a floor and a ceiling on mandatory coverage when there has been no written waiver. The statute cannot fairly be read to provide that coverage must be not less than $30,000/$60,000. By it terms, "coverage . . . shall not be required . . . with limits in excess of [$30,000/$60,000]." (§ 11580.2, subd. (m).) The phrase "not . . . in excess of" does not mean "not less than."

Defendant's reliance upon the rubric of liberal construction is also misplaced. The question posed here does not deal with the proper reading of a contract of insurance. To be sure, any ambiguity or uncertainty in an insurance policy must be resolved against the insurer. (*Insurance Co. of North America* v. *Sam Harris Constr. Co.* (1978) 22 Cal.3d 409, 412-413 [172 Cal.Rptr. 263].) But when contractual liability is superimposed by statute upon insurers, the rule of liberal construction no longer applies. "Conceding that any ambiguity or uncertainty of an insurance policy will be construed

against the insurer which caused the ambiguity, where the language is that of the Legislature, then that rule does not apply. In interpreting the statute then it must be given a reasonable construction according to the Legislature's real or apparent intention." (*Interinsurance Exchange* v. *Marquez* (1981) 116 Cal. App.3d 652, 656 [172 Cal.Rptr. 263]; citations omitted.) As we have explained, the Legislature intended by the enactment of subdivision (m) of section 11580.2 to impose both a minimum and a maximum level of uninsured motorist coverage.

The trial court adopted Enterprise's original claim that the limits of the uninsured motorist benefits available to defendant were $15,000. This reading, now abandoned on appeal, evidences an equal disregard of the statutory language. As we have recounted, when the Legislature acted to require insurers to provide uninsured motorist coverage unless expressly waived by the insured, its purpose was to make sure that persons injured by uninsured drivers would have at least a minimum level of insurance protection. (*Pabitzky* v. *Frager, supra,* 164 Cal.App.3d at p. 403; *California State Auto. Assn. Inter-Ins. Bureau* v. *Carter* (1985) 164 Cal.App.3d 257, 261 [210 Cal.Rptr. 140, 54 A.L.R.4th 1177]; *Mid-Century Ins. Co.* v. *Koch* (1970) 11 Cal.App.3d 1019, 1023 [90 Cal.Rptr. 280].) Originally the Legislature was satisfied that its purpose would be fulfilled by requiring uninsured motorist coverage to be offered to the extent insurance coverage would have been available if the uninsured driver had been insured to the minimum extent required by our financial responsibility law. (*Ibid*. See also *Interinsurance Exchange* v. *Alcivar* (1979) 95 Cal.App.3d 252, 268 [156 Cal.Rptr. 914].) But with the 1980 amendment, the Legislature acted to require that effective January 1, 1982, uninsured motorist coverage would be available in some circumstances in excess of the minimum liability insurance required to fulfill the financial responsibility law. (Stats. 1980, ch. 1321.) Under this amendment the uninsured motorist coverage cannot be less than the financial responsibility minimum and must also be at least equal to the limits specified in subdivision (m). Subdivision (m) of section 11580.2 now requires that unless waived, an automobile liability policy will be deemed to provide uninsured motorist coverage in the amount of the bodily injury liability coverage up to $30,000 per person and $60,000 per accident. Unlike defendant, who would misread subdivision (m) to guarantee a coverage not less than $30,000/$60,000, the trial court would not read it at all. The express language of the current and controlling statutory provisions cannot be overcome by references to an earlier legislative purpose. Enterprise now concedes on appeal that under the facts of this case the uninsured coverage available to defendant is $30,000/$60,000. We agree with this belated concession. Since the Sansome Trucking insurance policy provided liability limits in excess of both the limits imposed by the financial responsibility law and those contained in subdivision (m) of section 11580.2 and because

Enterprise failed to obtain a written waiver of uninsured motorist benefits, the policy must be deemed to provide, by operation of law, uninsured motorist benefits of $30,000 per person and $60,000 per accident for persons operating a commercial vehicle with a load capacity in excess of 1500 pounds. (§ 11580.2, subds. (a) and (m).)

In its judgment the trial court correctly determined that Enterprise's insurance policy provides uninsured motorist coverage to defendant, but the court erred in finding that the limit of the coverage is $15,000. Since we have concluded that in this one-person accident, Insurance Code section 11580.2, subdivisions (a) and (m) require that the policy be deemed to provide uninsured motorist coverage in the amount of $30,000, we will order that the judgment be modified accordingly.

## II

Defendant raises procedural objections to the judgment. ■ He asserts the judgment is not supported by the evidence because none was introduced. It is true that at the time the matter was to be tried, no witnesses were called and no evidence was presented. This is because that is the manner in which the parties chose to proceed. When the matter came on for trial setting it was assigned to Judge Dozier with the notation "to be submitted on briefs." Judge Dozier was unavailable and the matter was reassigned to Department 4 with the notation that it would be heard as an uncontested matter and that trial would require five minutes to one-half hour to schedule briefing. The minute order on the trial date states: "Matter was regularly called for trial this date. Parties indicated that testimony would not be given and that the matter would be submitted on briefs." The parties filed briefs in which they set forth the facts. The briefs reveal that with respect to the facts necessary to resolve the legal issue the parties were in complete agreement. Although the parties submitted a pure question of law for the court to resolve, there was nevertheless a "trial." (7 Witkin, Cal. Procedure (3d ed. 1985) Trial, § 3, p. 19.) But since there were no contested factual issues it would have been unduly time consuming for trial counsel to have insisted that witnesses be called and evidence be formally presented. Counsel reasonably assented to the submission of the issue on the briefs. Appellate counsel now berates the procedure chosen by the parties; however, since trial counsel did not object and in fact consented to the procedure we find the objection to have been waived. (9 Witkin, Cal. Procedure, *supra*, Appeal, §§ 305-308, pp. 316-318.)

Defendant contends the trial court erred in failing to issue a statement of decision. Before trial Enterprise filed a request for a statement of decision. After the court announced its intended decision Enterprise withdrew its

request for a statement of decision. Defendant then filed a request for a statement of decision which was denied as untimely. Defendant now contends he was entitled to rely upon Enterprise's request for a statement of decision. It is unnecessary for us to consider whether a litigant can rely upon a request for a statement of decision by his opponent. ■ As we shall explain, a statement of decision is only required upon a trial of a question of fact. (Code Civ. Proc., § 632; Cal. Rules of Court, rule 232(a).)[3] When the only issue tendered to the trial court is one of law, a statement of decision is unnecessary.

Prior to its amendment in 1981, Code of Civil Procedure section 632 required the superior court, when timely requested, to make written findings of fact and conclusions of law upon a trial of a question of fact by the court. (Former Code Civ. Proc., § 632, as amended by Stats. 1977, ch. 1257, § 22, p. 4763.) Under this former statute, it was well settled that findings were not required where the only question submitted to the court was a question of law. (*Healdsburg Police Officers Assn.* v. *City of Healdsburg* (1976) 57 Cal.App.3d 444, 456 [129 Cal.Rptr. 216]; *Applegate Drayage Co.* v. *Municipal Court* (1972) 23 Cal.App.3d 628, 635 [100 Cal.Rptr. 400]; *Johnston* v. *Security Ins. Co.* (1970) 6 Cal.App.3d 839, 844 [86 Cal.Rptr. 133]; *Koehn* v. *State Board of Equalization* (1958) 166 Cal. App.2d 109, 115 [166 Cal.Rptr. 109, 333 P.2d 125].) Nothing in the amendment changed this rule. Under the 1981 amendment, "upon a trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required." Instead, "[u]pon the request of any party appearing at the trial [of a question of fact by the court], . . . the court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial." (Code Civ. Proc., § 632.) As the

---

[3]Code of Civil Procedure section 632 provides in relevant part: "In superior, municipal, and justice courts, upon the trial of a question of fact by the court, written findings of fact and conclusions of law shall not be required. Upon the request of any party appearing at the trial, made within 10 days after the court announces a tentative decision, or if the trial has lasted less than one day, made prior to submission of the matter for decision, the court shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues at trial. The request for a statement of decision shall specify those controverted issues as to which the party is requesting a statement of decision. After a party has requested such a statement, any party may make proposals as to the content of the statement of decision."

California Rules of Court, rule 232(a) provides in relevant part: "On the trial of a question of fact by the court, the court shall announce its tentative decision by an oral statement, entered in the minutes, or by a written statement filed with the clerk. . . . [¶] The court in its tentative decision may (1) state whether a statement of decision, if requested, will be prepared by the court or by a designated party, and (2) direct that the tentative decision shall be the statement of decision unless within the ten days either party specifies controverted issues or makes proposals not covered in the tentative decision." The remainder of the rule deals with the proposals, the preparation and service of the proposed statement of decision and judgment, objections to it, and hearings.

court explained in *Miramar Hotel Corp.* v. *Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126 [210 Cal.Rptr. 114], the "Legislature, by its enactment of section 632, and the Judicial Council, by its adoption of California Rules of Court, rule 232, have created a comprehensive method for informing the parties and ultimately the appellate courts of the factual and legal basis for the trial court's decision." (*Id.,* at p. 1128, fn. and citation omitted.) But if there is no factual dispute, there is nothing to inform the appellate court about except the law and on questions of law the reviewing court must decipher the law for itself. Thus, when the case is submitted on what amounts to a stipulation of facts without oral testimony and there are no conflicting inferences to be drawn from the stipulated facts, "the issue becomes a question of law which can be resolved by an appellate court as well as a trial court." (*Oliver & Williams Elevator Corp.* v. *State Bd. of Equalization* (1975) 48 Cal.App.3d 890, 894 [122 Cal.Rptr. 249].) Since there were no disputed factual issues tendered at this trial, only a pure question of law was presented and consequently a statement of decision was not required.

█ Defendant contends the judgment does not resolve the controversy. He asserts there are numerous issues left open to further litigation. The contention flies wide of the mark. Pursuant to Insurance Code section 11580.2, subdivision (f) and a clause in the insurance policy in question, issues relating to the amount of compensation to which defendant is actually entitled are subject to arbitration. Unless the parties waive the right to arbitration, a trial court is without jurisdiction to resolve those issues. (*California State Auto. Assn.* v. *Blanford* (1970) 4 Cal.App.3d 186, 189 [84 Cal.Rptr. 333].) Under these circumstances Enterprise properly limited its request for declaratory relief to the legal question of the limits of the uninsured motorist coverage imposed upon it by Insurance Code section 11580.2, subdivisions (a) and (m). (See *Hartford Accident & Indemnity Co.* v. *Jackson* (1983) 150 Cal.App.3d 111, 114-115 [197 Cal.Rptr. 477]; *Kincer* v. *Reserve Ins. Co., supra,* 11 Cal.App.3d at pp. 717-718.) The judgment resolved the only issue before the trial court.

█ Defendant contends that he was denied due process of law. He first asserts that it is a denial of due process to render a decision without evidence or on the basis of evidence received out of court. (See *Gimbel* v. *Laramie* (1960) 181 Cal.App.2d 77, 85-86 [5 Cal.Rptr. 88].) As defendant's cited authority recognizes, and we have already held, the objection has been waived by counsel's consent to the procedure followed. (*Ibid.*) Defendant asserts the procedure was a sham, citing the objections we have already resolved. Since we have rejected each of defendant's assertions of procedural error individually, those assertions do not cumulatively support a finding of a violation of due process of law.

## DISPOSITION

The judgment is modified to provide that the applicable uninsured motorist benefit limitation against which defendant may make his claim is "thirty thousand dollars ($30,000) because of bodily injury to or death of one person in any one accident. . . . [and] sixty thousand dollars ($60,000) because of bodily injury to or death of two or more persons in any one accident." (§ 11580.2, subd. (m).) As modified the judgment is affirmed.

Puglia, P. J., and Park, J.,* concurred.

A petition for a rehearing was denied December 14, 1987, and on December 22, 1987, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied February 3, 1988.

---

* Assigned by the Chairperson of the Judicial Council.