[No. G003590. Fourth Dist., Div. Three. Feb. 29, 1988.]

JAMES T. PALM et al., Plaintiffs and Respondents, v.
JOHN R. SCHILLING, Defendant and Appellant.

**COUNSEL**

Wenke, Evans & Ikola, Wenke, Taylor, Evans & Ikola and Richard A. Derevan for Defendant and Appellant.

Douglas K. Wallace for Plaintiffs and Respondents.

**OPINION**

**CROSBY, J.—** The antideficiency provisions of Code of Civil Procedure section 580b may not be contractually waived as a condition of the encumbrance of real property with a purchase money mortgage or deed of trust or the renegotiation of an obligation, so long as it continues to be secured with the original real estate. The superior court erred in upholding a waiver of the latter variety here. We reverse accordingly.

### I

This litigation to collect a deficiency judgment on a secured promissory note had its genesis in John and Caroline Schilling's October 1980 purchase of James and Frances Palm's home for $725,000. The Schillings made a $210,050 cash down payment and executed two promissory notes for the balance. The first, in the face amount of $514,750—but endorsed down to $389,750—was due on January 15, 1981. The second, in the sum of $125,000, was to be paid October 28, 1982. The notes were secured by second and third deeds of trust on the acquired property.

The Schillings intended to satisfy the short-term obligation with the cash down payment received for the sale of their previous home and proceeds from an institutional loan secured by a new first trust deed on the property. They did obtain the bank financing, but escrow on their former residence did not close as planned. They lacked the funds to pay the first Palm note when it fell due.

The Schillings attempted to sell their newly acquired home and to arrange additional financing, but buyers and funding were apparently in short

supply. In June 1981, the Schillings obtained a 12-month loan from an institutional lender to pay the now overdue Palm obligation. The lender insisted its note have priority over the Palms' remaining trust deed, however. The Palms agreed, but only if the interest rate on their remaining note was increased retroactive to the date of purchase.

In June 1982, when the institutional loan was due and payment on the renegotiated Palm note was only months away, the Schillings again attempted to refinance. They found a willing lender; but it, too, was only amenable to accepting a position senior to the Palms' deed of trust.

The Palms agreed once again to subordinate their note, provided the Schillings immediately made a $25,000 payment to reduce the principal to $100,000; paid all accrued, but not yet due, interest; personally guaranteed the note; and waived their rights under Code of Civil Procedure section 580b.[1] Schilling, but not his wife, the co-owner of the property, signed the guaranty and waiver. After this farrago of financial furor, the home was left encumbered with two trust deeds securing the institutional loans and a third deed of trust in favor of the Palms on their remaining $100,000 note.

The following year one of the institutional lenders foreclosed on the property and acquired it on a credit bid at a trustee's sale. As junior lienholders, the Palms lost their security. They sued Schilling only for the deficiency based on his purported personal guaranty and waiver of section 580b.

In a brief trial, the court determined the purported personal guaranty by Schilling was "contrary to public policy, void and ineffectual." Under the compulsion of *Russell* v. *Roberts* (1974) 39 Cal.App.3d 390, 395 [114 Cal.Rptr. 305], however, the court ruled waiver of the antideficiency provision was valid and granted judgment for the Palms.

## II

■ Schilling first seeks reversal on a procedural point, i.e., the failure of the trial court to issue a statement of decision, and a philosophical one, i.e., the definition of a "day" for purposes of Code of Civil Procedure section 632. There is no reason to reenter these once festering legal backwaters.[2]

---

[1] Code of Civil Procedure section 580b provides, "No deficiency judgment shall lie *in any event* after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property . . . ." (Italics added.)

[2] At the time of trial, Code of Civil Procedure section 632 obligated the court to issue a statement of decision, if one was requested, after "the trial of a question of fact by the court

The only issue for the trial court to resolve was one of law, and we are not bound by that court's interpretation. We agree with our colleagues in the Third District: Reversal for failure to issue a statement of decision is unnecessary where the only question decided was one of law. (*Enterprise Insurance Co.* v. *Mulleague* (1987) 196 Cal.App.3d 528, 538-540 [241 Cal.Rptr. 846].) Accordingly, we proceed to the merits of the dispute.

## III

■ The Supreme Court has held the provisions of Code of Civil Procedure section 580b may not be contractually waived by the debtor in advance of or at the time a purchase money obligation is incurred. (See, e.g., *Freedland* v. *Greco* (1955) 45 Cal.2d 462, 467 [289 P.2d 463].) The court has not yet determined whether the provisions of section 580b may be waived *after* the obligation is incurred.[3]

In *Russell* v. *Roberts, supra,* 39 Cal.App.3d 390, 395, however, another panel of the Court of Appeal held the "rule [prohibiting waiver of the protective provisions of Code of Civil Procedure section 580b] does not apply after the sale and deed of trust transaction are completed." The *Russell* conclusion has been mechanically cited, in dicta and without discussion, by two other divisions, including our own. (*Goodyear* v. *Mack* (1984) 159 Cal.App.3d 654, 660 [205 Cal.Rptr. 702]; *Shepherd* v. *Robinson* (1981)

. . . ." In trials lasting more than one day, the request was required to be made within 10 days after the court's tentative decision. If the trial was concluded in less than a day, however, the request had to be made before the matter was submitted.

Problems arose when trials were conducted over a period of several days but actually consumed fewer than eight hours of court time. (See, e.g., *R. E. Folcka Construction, Inc.* v. *Medallion Home Loan Co.* (1987) 191 Cal.App.3d 50 [236 Cal.Rptr. 202], *Gordon* v. *Wolfe* (1986) 179 Cal.App.3d 162 [224 Cal.Rptr. 481], *Mitchell* v. *County of Orange* (1985) 165 Cal.App.3d 1185 [211 Cal.Rptr. 563], and *Architects & Contractors Estimating Service, Inc.* v. *Smith* (1985) 164 Cal.App.3d 1001 [211 Cal.Rptr. 45].) The Legislature has hopefully put an end to this semantic tempest by amending section 632, effective January 1, 1988, to provide that a request for statement of decision must be made before the matter is submitted where "the trial is concluded within one calendar day or in less than eight hours over more than one day . . . ." (Stats. 1987, ch. 207, § 1.)

[3] In this opinion we are concerned only with contractual waiver, i.e., where an agreement to give up the protection of section 580b would be the quid pro quo for some other benefit. But waiver may appear in different forms. For example, a debtor who fails to assert section 580b as an affirmative defense in an action by a purchase money mortgagee "waives" its protection. (Cf. *Salter* v. *Ulrich* (1943) 22 Cal.2d 263 [138 P.2d 7, 146 A.L.R. 1344]; see also *Doney* v. *Tambouratgis* (1979) 23 Cal.3d 91 [151 Cal.Rptr. 347, 587 P.2d 1160].) In addition, as we will discuss below, the benefits of section 580b may be lost where a purchase money mortgagee substitutes other property as security for the note. Neither situation is affected by today's decision. Waivers of nonjurisdictional legal defenses are allowed for reasons of judicial economy, and cases involving substituted security no longer qualify as purchase money mortgages within the terms of section 580b. (*Spangler* v. *Memel* (1972) 7 Cal.3d 603 [102 Cal.Rptr. 807, 498 P.2d 1055].)

128 Cal.App.3d 615, 626 [180 Cal.Rptr. 342].) As will be discussed anon, we disagree with *Russell* and conclude a purported contractual waiver of section 580b is inconsistent with its explicit language and unenforceable as contrary to public policy.

## IV

California's deficiency judgment legislation was thoroughly revamped during the 1930's to protect debtors who lost real property through private sale or judicial foreclosure. Code of Civil Procedure section 580a limits deficiency judgments after a power of sale in a deed of trust or mortgage has been exercised to "the difference between the fair value of the property at the time of the sale (irrespective of the amount actually realized at the sale) and the outstanding debt for which the property was security." (*Cornelison v. Kornbluth* (1975) 15 Cal.3d 590, 601 [125 Cal.Rptr. 557, 542 P.2d 981].) Code of Civil Procedure section 726 applies the same rule in the case of judicial foreclosure.

Deficiency judgments are prohibited, however, where a purchase money mortgage is involved, i.e., where the vendor received a deed of trust or mortgage to secure the purchase price of real property. (Code Civ. Proc., § 580b.)[4] Similarly, Code of Civil Procedure section 580d, added in 1940, bars a deficiency judgment where property is lost not through judicial foreclosure, with its concomitant right of redemption, but under a power of sale authorized by the mortgage or deed of trust itself.[5]

■ A wrinkle on the standard scenario develops when property is encumbered by several deeds of trust, a senior secured creditor forecloses, and the security of the junior lienholder is extinguished. Under those circumstances, the sold-out junior creditor is not restricted by the single action rule of section 726, the 90-day limitation period for initiation of an action as required by section 580a, or the fair-value provisions of either section. (*Roseleaf Corp.* v. *Chierighino* (1963) 59 Cal.2d 35, 39 [27 Cal.Rptr. 873, 378 P.2d 97].)

In *Roseleaf* the court observed that a senior lienholder who forecloses on his security places a junior secured creditor in the same position as the

---

[4] Code of Civil Procedure section 580b also applies to a "deed of trust, or mortgage, on a dwelling for not more than four families given to a lender [not necessarily the vendor] to secure repayment of a loan which was in fact used to pay all or part of the purchase price of such dwelling occupied, entirely or in part, by the purchaser." This aspect of the statute is not before us.

[5] The practical effect of section 580d, as many commentators have noted, is to preempt section 580a and place the remedies for nonjudicial foreclosures on a par with those for judicial ones. (See, e.g., Hetland, *Deficiency Judgment Limitations in California —A New Judicial Approach* (1963) 51 Cal.L.Rev. 1, 28-31; Bernardt, Cal. Mortgage and Deed of Trust Practice (Cont.Ed.Bar 1979) § 4.18, p. 153.)

debtor; i.e., "[e]ither would have to invest additional funds to redeem or buy in at the sale." (*Id.,* at p. 41.) The court reasoned that the junior lienholder is deserving of more protection in this situation than the debtor, who was responsible for the foreclosure by defaulting on a note, yet still retains the benefit of the bargain against the junior creditor, i.e., the funds loaned.

Code of Civil Procedure section 580b is viewed differently, however. Its ban against deficiency judgments does apply to sold-out junior creditors. (*Brown* v. *Jensen* (1953) 41 Cal.2d 193, 197-198 [259 P.2d 425], cert. den. (1954) 347 U.S. 905 [98 L.Ed. 1064, 74 S.Ct. 430]; see also *Spangler* v. *Memel, supra,* 7 Cal.3d 603, 610-611, reaffirming the rule.) The unique status of section 580b, as contrasted with sections 580a and 726, was discussed in *Roseleaf* as well. Musing at length on the origins of section 580b, the court finally settled on two explanations. First, forcing a seller to bear the risk of insufficient security on a purchase money mortgage discourages the overpricing of real property. (*Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d at p. 42.) Second, the section fosters a broader social purpose: In the event of a market decline and drop in property values, relieving the defaulting debtor from personal liability will benefit a sagging economy. (*Ibid.*; see also *Goodyear* v. *Mack, supra,* 159 Cal.App.3d at p. 659.) More recently, a third rationale was noted: "In certain situations . . . the Legislature deemed even [the] partial deficiency (permitted under section 580a and 726] too oppressive. Accordingly, . . . it enacted section 580b [] which barred deficiency judgments altogether on purchase money mortgages." (*Cornelison* v. *Kornbluth, supra,* 15 Cal.3d at p. 601.)

Perhaps in recognition of the prohibition against deficiency judgments, or perhaps because of the potential unfairness to junior lienholders powerless to prevent the destruction of their security by a senior secured creditor, the Supreme Court has taken a narrow view of purchase money mortgages. Accordingly, there are circumstances where a mortgage which appears to be of the purchase money variety is not treated as one. The rule is this: A mortgage securing the purchase price of property will be subject to the strictures of section 580b only if it "subserves the purposes of [that] section [] as explicated by [the court] in *Roseleaf* [*Corp.* v. *Chierighino, supra,* 59 Cal.2d 35] and *Bargioni* [v. *Hill* (1963) 59 Cal.2d 121 (28 Cal.Rptr. 321, 378 P.2d 593)]." (*Spangler* v. *Memel, supra,* 7 Cal.3d 603, 611.) If the transaction does not meet that criterion, the closed out creditor is not recognized as a purchase money obligee and will be permitted to pursue a deficiency judgment, consistent with the statutory provisions applying to nonpurchase money obligations.

The significance of the refusal to label a debt a purchase money obligation for the purpose of section 580b is critical to an analysis of the waiver issue,

and several examples are appropriate at this juncture. One of the more recent refusals is found in *Spangler* v. *Memel, supra,* 7 Cal.3d 603, where real property zoned for commercial development was sold to a partnership. The seller accepted a promissory note for a portion of the price, secured by a purchase money deed of trust which was to be subordinated to construction loans. At the seller's insistence, the four individual partners personally guaranteed the note and expressly "waive[d] their protection from deficiency judgments . . . ." (*Id.,* at p. 606.)

The construction loan went into default, the lender foreclosed, and the security for the seller's note became worthless. In awarding her a deficiency judgment against the individual partners, the trial court noted the "waiver of the anti-deficiency protection in return for the subordination clause was a separate obligation from the purchase of the property" and concluded a promise to forego the protection of section 580b in a separate transaction did not violate public policy. (*Id.,* at p. 608.)

On appeal, the partners contended their purported "waiver [of section 580b], being merely an attempt to circumvent the above statute, [was] illegal and unenforceable." (*Id.,* at p. 609.) The Supreme Court affirmed the judgment in the seller's favor, but ignored the waiver argument.[6] Instead, the court determined the agreement to subordinate the purchase money obligation to construction loans created such a variation on the standard purchase money transaction that section 580b no longer applied. (*Id.,* at p. 611.) Accordingly, without the bar of section 580b, a deficiency judgment was proper.[7]

Another example of what appears to be a purchase money mortgage but is not for the purpose of section 580b is found in *Roseleaf Corp.* v. *Chierighino,. supra,* 59 Cal.2d 35. There, the buyer of a hotel signed four promissory notes for a portion of the purchase price. One note was secured by a first

---

[6] The court noted, "The other contentions raised by the parties are predicated on the assumption that section 580b applies to the case at bench and involve interpretations of certain exceptions to the application of that section. . . . Since we have concluded that section 580b does not apply, we need not consider possible exceptions to its applicability." (*Id.,* at p. 615, fn. 10.)

[7] An astute summation of the *Spangler* decision is found in *Shepherd* v. *Robinson, supra,* 128 Cal.App.3d 615, 625: "[A] major exception to section 580b involves a vendor who subordinates his deed of trust to a major construction loan on the property. [Citations.] The rationale here is that a major change is anticipated in the use of the property, so that the vendor has no method of determining the future value of his security interest. To hold section 580b applicable in such a situation would force the vendor to subsidize and be subject to the business risks attendant on the development of the property. The purposes of section 580b . . . would not be furthered." The same cannot be said of the subordination here. The Palms knew exactly how much security they retained when they agreed the institutional lender's deed of trust could take priority over theirs.

trust deed on the hotel and its furnishings, but three others were secured by second trust deeds on other parcels of property the buyer owned. The senior secured creditors sold those parcels under powers of sale. Left without any security, the seller of the hotel sued on the notes.

The buyer's attempt to raise section 580b as a defense was rebuffed because the notes sued upon had not been secured by deeds of trust on the hotel. As he was not threatened with loss of that property coupled with continued liability for its purchase price, the court refused to recognize the purchase money nature of the original transaction. Section 580b, observed the court, would be applied automatically only in cases where "the vendor of real property retains an interest in the land sold to secure payment of part of the purchase price. Variations on the standard are subject to section 580b only if they come within the purpose of that section." (*Id.,* at p. 41.) The transaction there did not, and the seller was permitted to recover on the notes.

The facts in *Goodyear* v. *Mack, supra,* 159 Cal.App.3d 654 are similar to those in *Roseleaf.* In order to stave off fore- closure, the buyers of real property already encumbered with a purchase money mortgage arranged for reconveyance of that trust deed in exchange for a new note secured by a fourth trust deed on other property they owned. A senior lienholder fore- closed on the property securing the new indebtedness. His security lost, the original purchase money mortgagee sued for a deficiency judgment.

The buyers sought protection under section 580b, claiming the purchase money character of the original note was transferred to the new note and new security. A panel of this division disagreed. The purchase money character of the original note was not defeated by subsequent transactions involving the property until the purchase money deed of trust was reconveyed. (*Id.,* at p. 657.) Once that occurred, and the purchase money mortgagee relinquished his interest in the property and accepted a new note secured by a deed on trust on another parcel, the situation no longer resembled a purchase money mortgage. (*Id.,* at p. 658.)

Thus, a section 580b defense could succeed only if the purpose of that statute would be promoted by prohibition of a deficiency judgment. Characterizing section 580b as designed "to prevent overvaluation by placing ' "the risk of inadequate security on the purchase money mortgagee" ' [and] to prevent aggravation of a depression in land values by not burdening purchasers with the loss of property *plus* personal liability," we concluded these goals would not be fostered by barring a deficiency judgment on property

which was essentially foreign to the sale between the parties. (*Id.*, at p. 659.)[8]

A second line of defense urged by the buyers in *Goodyear* was that they never waived the benefits of section 580b. The contention was, of course, irrelevant once we concluded the transaction which was the subject of the lawsuit did not fall within the parameters of section 580b; waiver could no longer be an issue. Rather than decline to consider the claim, as the Supreme Court did in *Spangler* v. *Memel, supra,* 7 Cal.3d at page 615, footnote 10, we cited *Shepherd* v. *Robinson, supra,* 128 Cal.App.3d 615, 626 and announced the benefits of section 580b "may, however, be waived *subsequent* to the sale . . . ." (*Goodyear* v. *Mack, supra,* 159 Cal.App.3d at p. 660.) This conclusion was unnecessary in *Goodyear,* and we now believe it was incorrect as well.[9]

## V

■ The Palms concede this case involves a standard purchase money mortgage situation, and we agree. Thus, the waiver issue cannot be avoided. Relying on *Spangler, Goodyear,* and *Russell* v. *Roberts, supra,* 39 Cal.App.3d 390, the sellers urge Schilling's waiver was proper and entitles them to a deficiency judgment. As we have related in the preceding section, however, the *Spangler* court eschewed any reliance on waiver in permitting the junior lienholder to recover, and rightly so: The note in that case was not deemed a purchase money obligation subject to section 580b. Consequently, section 580b did not impair the seller's ability to obtain a deficiency judgment.

---

[8] Traffic on this street runs in both directions. Our colleagues in Division One have recognized, "there is no flat rule that the nature of a loan secured by a trust deed *never* changes in subsequent sales transactions. Instead, the proper inquiry is whether the facts are such that the purposes of the antideficiency statute will be advanced by applying it to [a] particular variation on a standard purchase money mortgage. . . . [¶] We conclude that although [the] original loan . . . was not to purchase real property, it was transmuted into the equivalent of a purchase money mortgage when rewritten. All factors which were *not* present in *Goodyear* and thus justified a holding that the purchase money mortgage had changed into a nonpurchase money loan, are present here and justify the converse holding." (*LaForgia* v. *Kolsky* (1987) 196 Cal.App.3d 1103, 1112 [242 Cal.Rptr. 282].)

[9] We criticize *Shepherd* v. *Robinson, supra,* 128 Cal.App.3d 615 on the same point. There, a purchase money mortgagee who, like the Palms, subordinated his deed of trust to another lender's, sought to avoid the antideficiency ban by claiming the buyers waived section 580b protection. The court rejected the argument, noting the waiver, if any there was, occurred as part of the sales transaction. Consequently, it was clearly against public policy. (*Freedland* v. *Greco, supra,* 45 Cal.2d 462.) In dicta, however, and citing *Russell* without any discussion, the *Shepherd* court added, "a purchaser can waive section 580b protection in a transaction subsequent to the sale . . . ." (*Shepherd* v. *Robinson, supra,* at p. 626.) We disagree with this statement for the same reason we now renounce similar language in *Goodyear.*

*Goodyear* did not involve a purchase money mortgage within the meaning of section 580b either. Discussion of the waiver issue there was superfluous—and incorrect. Neither *Spangler* nor *Goodyear* truly supports the Palms' position.

As discussed above (fn. 9, *ante*), *Shepherd* v. *Robinson, supra,* 128 Cal.App.3d 615 did involve a purchase money mortgage. While the reference to waiver in that case was unfortunate, it had no bearing on the result: The purported waiver there occurred at the time of the loan transaction and was clearly against public policy.

*Russell* v. *Roberts, supra,* 39 Cal.App.3d 390 is not so easily dispatched, however. The facts are legally indistinguishable from those in this case. There, several purchasers of real property signed a promissory note secured by a fourth deed of trust. When the note was past due, the buyers executed a new agreement which extended the due date and provided for modest monthly payments in the interim. A senior lienholder then foreclosed on the property. The assignee of the purchase money mortgagee sued and prevailed based on the trial court's conclusion that the debtors, " 'knowing of the protection afforded them by Code of Civil Procedure, Section 580b' . . . requested an extension of time for payment [and] 'knowingly and voluntarily waived any protection which may have been originally afforded any of them by section 580b of Code of Civil Procedure.' " (*Id.,* at p. 394.)

Quoting from *Salter* v. *Ulrich, supra,* 22 Cal.2d 263, 267, the appellate court rejected the debtors' contention that the benefits of section 580b could not be waived after the close of escrow in a real property transaction: " 'Since necessity often drives debtors to make ruinous concessions when a loan is needed, section 726 should be applied to protect them and to prevent a waiver in advance. This reasoning, however, does not apply after the loan is made, when all rights have been established and there remains only the enforcement of those rights. . . .' (To the same effect see *Morello* v. *Metzenbaum* [1944] 25 Cal.2d 494, 496 [154 P.2d 670].) The court in *Freedland* v. *Greco, supra,* 45 Cal.2d 462, 467[ ] made it clear that the same rationale applies to such statutes as section 580b." (*Id.,* at p. 395.) Our review of *Salter, Morello,* and *Freedland,* however, convinces us none supports the notion that section 580b may be contractually waived after the buyer has burdened his property with a purchase money mortgage. "Ruinous concessions" are, if anything, easier to obtain when the debtor is in default. Then, the temptation to "press the bet" is likely to be stronger than the poor decision to purchase the property in the first instance.

In *Freeland* v. *Greco, supra,* 45 Cal.2d 462, for example, the Supreme Court reversed a deficiency judgment in favor of a nonpurchase money

secured creditor under the mandate of Code of Civil Procedure section 580d. There, the buyer of the stock and fixtures of a liquor business gave the seller two promissory notes, each representing the entire sum owed. One note was secured by the personal property which was the subject of the transaction, the other by a parcel of real property owned by the buyer. When the buyer defaulted, the seller caused the real property to be sold under a power of sale authorized by the deed of trust. He then foreclosed the chattel mortgage and obtained a deficiency judgment.

Code of Civil Procedure section 580d prohibits deficiency judgments where property is lost through a power of sale. The creditor's tactic of requiring the debtor to sign two notes for the same debt had the "legal effect [of requiring him to] waive in advance the protection afforded" by section 580d. (*Id.*, at p. 468.) After noting that the provisions of sections 580a and 726 may not be waived in advance by the debtor, the court concluded, "the same rules should apply to section 580d. That section would have little effect if the prospective creditor could compel the prospective debtor to waive it in advance." (*Id.*, at p. 467.)

*Freedland* indisputably dealt only with an advance or contemporaneous waiver. It is an unreasonable leap of logic to suggest a corollary of the statement that section 580d may not be waived in advance of a loan obligation is that sections 580b and 580d may be waived *after* one. Nothing in *Freedland* remotely justifies that conclusion.

*Morello* v. *Metzenbaum, supra,* 25 Cal.2d 494 is also of no assistance. There, the defendant borrowed $6,000 from the plaintiff. When the note was past due, the defendant executed a new agreement with his creditor and this time encumbered a real property interest as security for the debt. The defendant defaulted, and the creditor obtained title to the real property interest under a power of sale.

The creditor then sued for the deficiency. It made no difference that the secured note under which he obtained title to the real property interest was executed months after the original loan: Code of Civil Procedure section 580d barred a deficiency judgment once the security was lost under a power of sale. Waiver was not an issue.

*Salter* v. *Ulrich, supra,* 22 Cal.2d 263 requires a more detailed examination, for it is the first opinion to speak in terms of subsequent waivers, albeit in dictum. There, the Supreme Court affirmed a judgment for a creditor who sued on a secured note without first attempting to satisfy the debt from the security. But the debtor had failed to assert the single action rule of section 726 as a defense in the trial court. The court first noted, "[t]he fact

that a note is secured is an affirmative defense which must be pleaded" (*id.,* at p. 267) rather than a jurisdictional bar to litigation. Accordingly, "its benefits may be waived by a failure to call the attention of the court to the true situation." (*Id.,* at p. 268.)

In a discussion which was clearly dictum, the court also observed the result was "consistent" with the language of Civil Code section 2953, a statute enacted after the *Salter* loan transaction. That provision was adopted in 1937 (four years after the Legislature adopted section 580b) and has remained unchanged since 1941. It provides, "Any express agreement *made or entered into by a borrower at the time of or in connection with the making of or renewing of any loan secured* by a deed of trust, mortgage or other instrument creating a lien on real property, whereby the borrower agrees to waive the rights, or privileges conferred upon him by Sections 2924, 2924b, 2924c of the Civil Code [pertaining to notices of default and election to sell] or by Sections 580a or 726 of the Code of Civil Procedure, shall be void and of no effect. . . ." (Italics added.) Based on a literal reading of the statute, the *Salter* court determined that the debtor's subsequent waiver—one *inferred* by the failure to raise section 726 as an affirmative defense—was not against public policy or inconsistent with Civil Code section 2953 "since by its terms it purports to apply only to a waiver agreement which is exacted in advance as a condition to the making or renewing of any loan secured by a mortgage or deed of trust." (*Salter* v. *Ulrich, supra,* 22 Cal.2d at p. 267.)

With the passage of time, *Salter's* dictum has become the sole authority approving a subsequent contractual waiver of section 726. Based on the facts in *Salter* and the purposes of deficiency legislation, we have severe reservations as to the rule's heritage. But that is not our concern; this case involves only a purported subsequent contractual waiver of section 580b.

We do not read Civil Code section 2953 to support the Palms' claim that section 580b may be waived subsequently by contract. Section 580b predated Civil Code section 2953, yet it is not mentioned in the later-enacted provision. One may presume the Legislature was aware of section 580b but intended to exclude it from the aegis of section 2953. (*Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345, 353 [211 Cal.Rptr. 742, 696 P.2d 134]; *Estate of McDill* (1975) 14 Cal.3d 831, 837 [122 Cal.Rptr. 754, 537 P.2d 874].)[10] But the reason is not that the Legislature intended to permit subsequent

[10]One legal scholar has noted "[t]he pointed omission . . . of any reference to sections 580b and 580d [in Civil Code section 2953] has given room to speculation as to the effects of an attempted waiver of the benefits of these sections." (Riesenfeld, *California Legislation Curbing Deficiency Judgments* (1960) 48 Cal.L.Rev. 705, 717.) He suggests "three different views are conceivable," i.e., that a waiver of those sections is always possible, never possible, or possible only as authorized by section 2953. He offers no suggested conclusion, however.

waivers of section 580b, but that it was unnecessary to include that section within Civil Code section 2953 because, by its own terms, section 580b was not waivable.

There would be no need to include section 580b in section 2953's list of permissible waivers because there never can be a "subsequent" contractual waiver of section 580b. As the Supreme Court observed decades ago, "[w]ith purchase money trust deeds, [ ] the character of the transaction must necessarily be determined at the time the trust deed is executed. Its nature is then fixed for all time and as so fixed no deficiency judgment may be obtained regardless of whether the security later becomes valueless." (*Brown* v. *Jensen, supra,* 41 Cal.2d at p. 197.) No matter how many subsequent buyers acquire property encumbered with a purchase money trust deed or mortgage, the deed retains its purchase money character so long as the creditor retains an interest in the original property sold. (*Goodyear* v. *Mack, supra,* 159 Cal.App.3d at p. 657.) Renegotiation of a purchase money note, whether viewed as a renewal or a new transaction, will not support a waiver because section 580b prohibits a waiver in advance of or at the time of the creation of a purchase money mortgage.

The explicit language of section 580b brooks no interpretation other than that deficiency judgments are prohibited by a purchase money mortgagee so long as a purchase money mortgage or deed of trust is in effect on the original real property. To allow a purchase money creditor to circumvent the absolute rule by enforcing a purported waiver of section 580b in exchange for other concessions would flaunt the very purpose of the rule. If the purchase money creditor retains an interest in the original property, the debtor cannot be held for a deficiency. If the purchase money creditor does not wish to accept the risk that the property will be lost through foreclosure by another secured creditor, the remedy is to either foreclose himself or destroy the purchase money nature of the transaction by reconveying the deed or mortgage on the original real estate in exchange for the substitution of other security. (*Goodyear* v. *Mack, supra,* 159 Cal.App.3d 654.) Contractual waiver as the quid pro quo for any other concession is contrary to public policy.

Judgment reversed. Appellant is entitled to costs on appeal.

Wallin, Acting P. J., and Sonenshine, J., concurred.

On March 25, 1988, the opinion was modified to read as printed above.