Filed 1/9/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

|  |  |
|---|---|
| F.P.,<br><br>   Plaintiff and Respondent,<br><br> v.<br><br>JOSEPH MONIER,<br><br>   Defendant and Appellant. | C062329<br><br>(Super. Ct. No. 06AS00671) |

   APPEAL from a judgment of the Superior Court of Sacramento County, Robert Ahern, Judge. (Retired judge of the Santa Clara Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.) Affirmed as modified.

   Ortiz Law Office, Jesse S. Ortiz III; Jay-Allen Eisen Law Corporation, Jay-Allen Eisen, and Aaron S. McKinney for Defendant and Appellant.

   Law Offices of John P. Henderson, John P. Henderson, and David C. Henderson for Plaintiff and Respondent.

Following a bench trial, the trial court found defendant Joseph Monier "molested his biological cousin, Plaintiff [F.P.,] numerous times when she was ten years old" and ordered him to pay damages to plaintiff in the amount of $305,096, consisting of $55,096 for special economic damages ($44,800 for lost income and $10,296 for past and future medical expenses), and $250,000 for general noneconomic damages.

Defendant appeals, contending the trial court erred in failing to issue a statement of decision following his timely request for one, and the error is reversible per se. According to defendant, "[w]ithout a statement of decision, it is impossible to tell whether the trial court allocated general damages as required by Proposition 51."[1] Defendant also claims there is no substantial evidence to support the trial court's award of lost income, and the trial court erred in failing to offset defendant's parents' $275,000 pretrial settlement with plaintiff against plaintiff's economic damage award.

We shall conclude the trial court erred in failing to issue a statement of decision. Although such a failure is often treated as reversible per se (*Miramar Hotel Corp. v. Frank B. Hall & Co.* (1985) 163 Cal.App.3d 1126, 1129 (*Miramar*)), we find no miscarriage of justice permitting a reversal here. (Cal. Const., art. VI, § 13.) Significantly, we shall conclude defendant forfeited any right to apportionment under Proposition 51 by failing to timely raise the issue at trial; thus, the absence of a statement of decision on the issue of general noneconomic damages is of no consequence. We shall further conclude that substantial evidence supports a finding plaintiff lost income in the amount of $42,120, not $44,800 as found by the trial court, and defendant is entitled to a setoff from plaintiff's adjusted award of economic damages in the amount of $47,664. Accordingly, we shall modify the judgment to reduce the amount of special economic

---

[1] The Fair Responsibility Act of 1986 (Civ. Code, § 1431 et seq.); hereafter Proposition 51.

damages defendant must pay plaintiff to $4,752 and the total judgment to $254,752, and affirm the judgment as modified.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1990 and 1991, defendant, who was 17 years old and a senior in high school, committed various acts of sexual battery upon plaintiff, his 10-year-old cousin. Such acts included plaintiff orally copulating defendant, and defendant performing anal sex on plaintiff. This conduct occurred while plaintiff was under the care and supervision of defendant's parents.[2] During the same period of time, plaintiff's father also was sexually abusing her by touching her genitals and having vaginal intercourse with her.

Plaintiff first sought treatment for depression and anxiety, which she attributed to the sexual abuse, in 2005 when she was 24 years old. From June until approximately August 2005 she received counseling from Christine Volker, and from September 2005 until December 2007 she was treated by Dr. Laurie Wiggen, a licensed clinical psychologist. Dr. Wiggen diagnosed plaintiff with posttraumatic stress disorder, which she attributed to the trauma plaintiff suffered as a result of being molested by her father and defendant. Dr. Wiggen could not distinguish between the harm done by plaintiff's father and defendant; rather, she opined that their conduct was "cumulatively impactful in their damage emotionally to [plaintiff] . . . ."

Plaintiff also was evaluated by Dr. Eugene Roeder, a licensed psychologist, in July 2005. The purpose of that one-day evaluation was to assess plaintiff's psychological functioning. Dr. Roeder diagnosed plaintiff with major depression, an anxiety disorder, and posttraumatic stress disorder. According to Dr. Roeder, the posttraumatic stress

---

[2] At trial, defendant vehemently denied sexually abusing plaintiff. On appeal, however, defendant does not challenge the trial court's finding he molested plaintiff. The issues raised on appeal are limited to the trial court's failure to issue a statement of decision and damages.

3

disorder diagnosis is consistent with plaintiff's "descriptions of being a sexual molest victim." Like Dr. Wiggen, Dr. Roeder could not distinguish between the symptoms plaintiff was experiencing as a result of being molested by defendant from those she was experiencing as a result of being molested by her father, but he found "the sexual molestation by her father was dramatically more traumatic than by her cousin [(defendant)]. . . . [¶] . . . [¶] . . . because her relationship with her father was a much more central, basic relationship in her life" and "[h]er relationship with the [defendant] was more tangential."

In February 2006, plaintiff initiated the instant action against defendant and defendant's parents. In her complaint, plaintiff asserted causes action against defendant for sexual battery in violation of Penal Code sections 288, subdivisions (a) and (b)(1) (lewd and lascivious acts), 288a, subdivisions (b)(1) and (c)(2) (oral copulation), 286, subdivisions (b)(1) and (c)(2) (sodomy), and 289, subdivisions (a)(1) and (b) (sexual penetration). She also asserted causes of action against defendant for gender violence (Civ. Code, § 52.4, subd. (a)) and intentional infliction of emotional distress. Plaintiff asserted a negligence cause of against defendant's parents, claiming they failed to reasonably care for, supervise, direct, oversee, and protect her from the harm inflicted upon her by defendant. As relevant here, plaintiff prayed for general and special damages "jointly and severally as to all defendants."

In his answer, defendant denied the allegations and asserted 16 affirmative defenses, including that others were at fault as to the matters and things alleged by plaintiff and that any liability should be apportioned among them.

Prior to trial, defendant's parents' homeowner's insurance carrier settled plaintiff's negligence cause of action against defendant's parents for $275,000 in exchange for a general release. A copy of the settlement agreement was filed with the trial court on February 4, 2008, and the trial court specifically was made aware of the settlement prior to trial.

4

The matter was tried to the court without a jury. On April 29, 2009, the trial court orally announced its tentative decision, finding defendant committed the acts complained of by plaintiff, and his conduct was a substantial factor in causing her injuries. (Cal. Rules of Court, rule 3.1590.) The trial court indicated it was awarding damages to plaintiff in the amount of $305,096, consisting of $44,800 for lost income, $10,296 for past and future medical expenses, and $250,000 for general noneconomic damages. The trial court instructed plaintiff's trial counsel to prepare a judgment.

Later that same day, defendant timely filed a request for a statement of decision. (Code Civ. Proc., § 632;[3] Cal. Rules of Court, rule 3.1590(d) & (n).) As relevant here, the request sought a statement setting forth "the basis upon which the Court awarded special damages, the basis upon which the court awarded emotional distress damages, the basis upon which the court awarded past and future medical expenses, and the basis upon which the court granted lost wages." Meanwhile, plaintiff's trial counsel prepared a judgment and submitted it to the trial court on May 1, 2009, along with a declaration outlining the events leading up to its submission. In his declaration, plaintiff's trial counsel explained that he faxed a copy of the judgment to defendant's trial counsel following trial on April 29, 2009, and was informed that defendant's trial counsel was no longer at that number. The next day, plaintiff's trial counsel faxed a copy of the judgment to defendant's trial counsel's new fax number and left a voicemail message advising him that the trial court "needed the Judgment Following Court Trial reviewed and signed if approved, immediately as [the trial judge, who was visiting,] was leaving Sacramento on May 1, 2009." Plaintiff's trial counsel did not hear from defendant's trial counsel and submitted the judgment to the trial court the next day, May 1, 2009. The record fails to disclose that any notice was taken by the trial court of defendant's request

_____

[3] Further undesignated statutory references are to the Code of Civil Procedure.

5

for a statement of decision, and judgment was filed on May 1, 2009, without any formal statement of decision having been rendered.

Defendant timely appeals.

DISCUSSION

I

The Trial Court's Error in Failing to Issue a Statement of Decision Does Not Warrant Reversal Absent a Showing That Remanding the Matter for the Preparation of a Statement of Decision Would Benefit Defendant or Assist This Court

Defendant contends the trial court's error in failing to issue a statement of decision is reversible per se, without inquiry into prejudice.

Pursuant to section 632, upon request of any party in a nonjury trial, the trial judge "shall issue a statement of decision explaining the factual and legal basis for its decision as to each of the principal controverted issues . . . ." Where, as here, the trial is not concluded within one day, the request must be made within 10 days after the court announces its tentative decision. (*Ibid.*) A statement of decision is required only on the principal controverted issues specified in the request for a statement of decision; omitted issues are deemed waived. (*City of Coachella v. Riverside County Airport Land Use Com.* (1989) 210 Cal.App.3d 1277, 1292.) Normally, the failure to issue a statement of decision is considered reversible error, and the matter is remanded to the trial judge who originally presided over the trial to complete the process. (*Karlsen v. Superior Court* (2006) 139 Cal.App.4th 1526, 1530-1531 (*Karlsen*); see also *Miramar, supra,* 163 Cal.App.3d at p. 1129.) "If the trial judge who originally presided over the trial has become incapacitated or has died, no other judge can perform the task and the matter must be retried." (*Karlsen,* 139 Cal.App.4th at p. 1531, italics omitted.)

Here, defendant timely requested a statement of decision on the same day the trial court announced its tentative decision (§ 632), and judgment was filed two days later without a statement of decision having been rendered. Clearly, this was error. (*Ibid.*)

6

The question is whether we must reverse the judgment and remand the matter without any inquiry into prejudice. The answer is no.

"From as far back as 1872, a fundamental precept in California is that in civil cases only prejudicial error is reversible." (*Biscaro v. Stern* (2010) 181 Cal.App.4th 702, 709, citing § 475, & Cal. Const., art. VI, § 13.) Article VI, section 13 of the California Constitution provides that a judgment cannot be set aside "unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." "This fundamental restriction on the power of appellate courts is amplified by Code of Civil Procedure section 475, which states that trial court error is reversible only where it affects '. . . the substantial rights of the parties . . . ,' and the appellant 'sustained and suffered substantial injury, and that a different result would have been probable if such error . . . had not occurred or existed.' Prejudice is not presumed, and the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred. [Citations.]" (*Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833.)

Notwithstanding the above, "some errors in civil cases remain reversible per se, primarily when the error calls into question the very fairness of the trial or hearing itself." (*Biscaro v. Stern*, *supra*, 181 Cal.App.4th at p. 709.) For example, the following have been found to be reversible per se: erroneous denial or substantial impairment of the constitutional right to a trial by jury (*People v. One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 300; *Holley v. J & S Sweeping Co.* (1983) 143 Cal.App.3d 588, 592-594); erroneous denial of a hearing (*Adoption of Baby Girl B.* (1999) 74 Cal.App.4th 43, 55); and representation by counsel with an adverse interest (*Hammett v. McIntyre* (1952) 114 Cal.App.2d 148, 158). Conversely, "there is no rule of automatic reversal or 'inherent' prejudice applicable to any category of civil instructional error, whether of commission or omission." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 580.)

7

Defendant relies on *Miramar* and a series of other Court of Appeal decisions, including a recent decision of this court, in support of his assertion that the trial court's error in failing to issue a statement of decision is reversible per se. In *Miramar,* the court held the trial court's failure to render a formal statement of decision in accordance with section 632 constituted reversible error per se, explaining a statement of decision is necessary to frame the issues for appeal, assist the appellate court in its review, and permit the parties to make proposals and objections concerning its content. (*Miramar, supra,*163 Cal.App.3d at p. 1129.) The court did not mention the constitutional mandate that no judgment shall be set aside in the absence of a miscarriage of justice. (See Cal. Const., art. VI, § 13.) Instead, the court simply stated: "We impose no substantial burden upon trial courts by insisting upon adherence to the legislative mandate as explicated by [former] rule 232. The trial court is specifically authorized to designate a party to prepare the statement of decision [citations] and thus is required only to review the statement and any objections thereto and to make or order to be made any corrections, additions, or deletions it deems necessary or appropriate. [¶] Were we, conversely, to condone a total or even a material failure by trial courts to observe the prescribed procedure for revealing the basis for their respective decisions, we would be thrusting a quite substantial burden upon the litigants and also upon the appellate courts. At the outset of virtually every appeal of such a case, there would emerge a threshold question as to precisely what were the 'principal controverted issues at trial.' It is ineluctable that such a classification could most easily be made by the trial judge. More importantly, where a request for a statement of decision has been made and an inadequate statement or no statement whatsoever has been provided, then each appeal is inevitably based upon what is tantamount to a claim that the judgment is not supported by substantial evidence. This in turn requires both the litigants and the appellate court to conduct an examination of the entire record in order to properly review the trial court decision." (*Miramar, supra*, at pp. 1129-1130.)

8

Presiding Justice Spencer filed an opinion concurring in the result.  She did so "[w]ith great reluctance," explaining:  "Ordinarily, I consider a rule of per se reversibility inadvisable when, as in the instant matter, there is no substantial evidence to support a judgment for the appealing party and a reversal rectifies no miscarriage of justice.  In the past, this court has used the harmless error standard to affirm a judgment notwithstanding the presence of the same procedural error present in the instant case.  [¶]  However, it now appears the practice in the trial courts of issuing minute orders, such as that utilized in the case at bar, in lieu of complying with the requirements of section 632 is on the increase.  The far-reaching and burdensome effects of that practice mandate that it end immediately.  Since I perceive no means of effecting that result other than per se reversal, I join with the majority."  (*Miramar, supra,* 163 Cal.App.3d at pp. 1130-1131 (conc. opn. of Spencer, P. J.).)

Neither the *Miramar* majority nor any of the other decisions cited by defendant mention the constitutional requirement of a miscarriage of justice, much less attempt to explain why a trial court's error in failing to issue a statement of decision is not subject thereto.  (*Miramar, supra,* 163 Cal.App.3d at pp. 1127-1129; see also *Wallis v. PHL Associates, Inc*. (2013) 220 Cal.App.4th 814, 825; *Gruendl v. Oewel Partnership, Inc.* (1997) 55 Cal.App.4th 654, 659-662; *Whittington v. McKinney* (1991) 234 Cal.App.3d 123, 125-129; *Social Service Union v. County of Monterey* (1989) 208 Cal.App.3d 676, 681; *Gordon v. Wolfe* (1986) 179 Cal.App.3d 162, 165, superseded by statute on another point as stated in *In re Marriage of Gray* (2002) 103 Cal.App.4th 974, 978-979; *R. E. Folcka Construction, Inc. v. Medallion Home Loan Co.* (1987) 191 Cal.App.3d 50, 54 (*R. E. Folcka*); *In re Marriage of McDole* (1985) 176 Cal.App.3d 214, 219, disapproved on another ground by *In re Marriage of Fabian* (1986) 41 Cal.3d 440.)[4]

---

[4]  This court recently followed *Miramar* in *Wallis v. PHL Associates, Inc., supra*, 220 Cal.App.4th at page 825.  However, in *Wallis* the parties did not raise the applicability of

We may not ignore the constitutional requirement of a miscarriage of justice as a prerequisite for reversal. (See generally *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801-802; *Soule v. General Motors Corp., supra,* 8 Cal.4th at p. 580.) Moreover, as we shall explain, *Miramar's* holding is at odds with decisions of our Supreme Court applying former section 632.

"[S]ection 632 originally required written findings of fact and conclusions of law in both superior and municipal courts. [Citation.] Such findings were considered fundamental to the decisionmaking process. [Citation.] The purpose of the requirement was described in *Frascona v. Los Angeles Ry. Corp.* (1920) 48 Cal.App. 135, 137-138 [191 P. 968]: 'The right to findings is a substantial right, as inviolate, under the statute, as that of trial by jury under the constitution. [Citation.] The code provision requiring written findings of fact is for the benefit of the court and the parties. To the court it gives an opportunity to place upon record, in definite written form, its view of the facts and the law of the case, and to make the case easily reviewable on appeal by exhibiting the exact grounds upon which the judgment rests. To the parties, it furnishes the means, in many instances, of having their cause reviewed without great expense. It also furnishes to the losing party a basis of his motion for a new trial; he is entitled to know the precise facts found by the court before proceeding with his motion for a new trial, in order that he may be able to point out with precision the errors of the court in matters either of fact or law. [Citation.]' " (*R. E. Folcka, supra,* 191 Cal.App.3d at pp. 52-53.)

Notwithstanding the "fundamental," "substantial," and "inviolate" nature of the right to express findings under former section 632, as expressed in *R. E. Folcka,* in *Edgar v. Hitch* (1956) 46 Cal.2d 309, our Supreme Court held that a trial court's failure to make findings on the material issues as specified in former section 632, is subject to a

___

article VI, section 13 of the California Constitution. Nor apparently did the parties in many, if not all, of the cases following *Miramar*.

10

prejudicial error analysis. (*Edgar v. Hitch, supra*, at pp. 312-313.) There, Edgar agreed to sell hay to Hitch for $42.50 per ton. Hitch claimed the purchase price was $32.50 per ton and paid Edgar for 66 tons at this rate with two checks, the second of which included the notation: " 'Pd. in full for all Hay Bought From John Edgar @ 32.50 Ton.' " (*Id.* at p. 310.) Edgar sued for the unpaid balance of $660 then cashed the checks. Following a bench trial, the trial court found the agreed price was $42.50 per ton and awarded Edgar the unpaid balance. The trial court did not make any findings on Hitch's accord and satisfaction defense. (*Id.* at pp. 310-311.) On appeal, Hitch argued the evidence at trial established such a defense as a matter of law. In response, Edgar pointed to evidence that Hitch knew the price was $42.50 per ton and argued Hitch's "insistence on a price of $32.50 was not the result of a genuine misunderstanding or a failure of honest minds to meet but was merely an attempt to 'get away with' paying less than he originally agreed to pay." (*Id.* at pp. 312, 311.)

Our Supreme Court reversed, explaining, "Section 632 of the Code of Civil Procedure required the trial court to make findings on the material issues in the case, and the findings must be examined to determine whether the judgment was based on the defendant's bad faith. The defendant is entitled to a finding on the validity of his defense of accord and satisfaction. [Citations.] In the absence of such a finding, sufficient support for the judgment for plaintiff cannot be ascertained. Therefore, under the circumstances here presented a failure to make a finding on the defense of accord and satisfaction of a bona fide dispute would constitute *prejudicial error*." (*Edgar v. Hitch, supra*, 46 Cal.2d at p. 312, italics added; see also *Bailey v. Leeper* (1956) 142 Cal.App.2d 460, 465 [holding trial court's error in failing to make specific findings "is one in procedure and therefore not reversible under the Constitution (art. VI, § 4 1/2 [predecessor to art. VI, § 13]) unless from an examination of the entire record we can say that the error complained of has resulted in a miscarriage of justice"].)

11

A 1968 amendment to section 632 abolished the mandatory requirement for findings of fact and conclusions of law and substituted the alternatives of (1) findings on request or (2) a written judgment. In *Guardianship of Brown* (1976) 16 Cal.3d 326, our Supreme Court held that the failure to issue requested findings on material issues under section 632 was subject to a prejudicial error analysis. Relying on its earlier decision in *Edgar v. Hitch, supra,* 46 Cal.2d 309, 312, our Supreme Court observed "that unless waived, express findings are required on all material issues raised by the pleadings and the evidence, and failure to find on a material issue will *ordinarily* constitute reversible error." (*Guardianship of Brown, supra,* 16 Cal.3d at p. 333, italics added.) There, the trial court found Brown to be incompetent and, over the objection of his wife, issued an order appointing Brown's mother guardian of his person and estate and authorizing the mother to take Brown to New York for medical care. (*Id.* at pp. 330-331.) No finding was made regarding whether it was in the best interest of Brown for his mother, rather than his wife, to be appointed guardian. In concluding the trial court's failure to make such a finding constituted reversible error, the court first explained that the issue was properly raised: "The primary thrust of appellants' case before the trial court was that it was in the best interest of the incompetent to remain with his wife in his home in San Francisco pursuing the rehabilitation program which she had organized and coordinated for him. [The wife] argued that upon a finding of incompetency the only consideration governing the appointment of a guardian is the best interest of the incompetent. As noted, in her objections to the court's findings, she specifically requested a finding on that point. No express finding in that respect was made. If such a finding was required, [the wife's] pleadings, briefs and requests for specific findings were sufficient to raise and frame the best interest issue and apprise the court of its obligation to make such a finding." (*Id.* at p. 334.) The court then explained that such a finding was required because the best interest of the incompetent is a material issue in every guardianship proceeding, particularly where there are competing petitions for appointment. (*Id.* at

12

p. 335.) Finally, after reviewing the evidence, the court concluded: "No finding having been made on this material issue, and [the wife] having introduced substantial evidence to support such a finding in her favor [citation], we conclude that the order appointing [the mother] guardian must be reversed." (*Id.* at p. 336; see also *McAdams v. McElroy* (1976) 62 Cal.App.3d 985, 996 ["failure to make an express finding on a material issue is not always prejudicial"].)

While the Legislature has since amended section 632, most notably in 1981 by abolishing the requirement of findings and conclusions and instituting the statement of decision process utilized today (*Raville v. Singh* (1994) 25 Cal.App.4th 1127, 1133, fn. 5; former § 632), a statement of decision is equivalent to the findings of fact and conclusions of law required by former section 632 (see *R. E. Folcka, supra,* 191 Cal.App.3d at p. 54), and "the case law on findings and conclusions under former section 632 can be applied by analogy to determine issues raised under present section 632" (*McCurter v. Older* (1985) 173 Cal.App.3d 582, 592, disapproved on other grounds in *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1137).

For all the foregoing reasons we decline defendant's invitation to reverse the judgment and remand the matter without first considering whether the trial court's failure to render a statement of decision setting forth "the basis upon which the Court awarded special damages, the basis upon which the court awarded emotional distress damages, the basis upon which the court awarded past and future medical expenses, and the basis upon which the court granted lost wages" resulted in a miscarriage of justice.[5] As we shall explain, it did not.

---

[5] Defendant also requested that the trial court "issue a statement of decision as to the credibility of the witnesses presented by the Plaintiff and each of the witnesses presented by [defendant], [and] the value the Court placed [on] all said witnesses . . . ." He does not mention this specific request in his appeal. Moreover, a trial court need not discuss each question listed in a party's request for a statement of decision, but need only explain

13

II

Defendant Forfeited Any Right to Apportionment Under Proposition 51 by Failing to Raise the Issue at Trial

Defendant sought a statement of decision setting forth, among other things, "the basis upon which the court awarded emotional distress damages . . . ." According to defendant, "Had the trial court set forth 'the factual and legal basis' upon which it awarded general damages against [him], . . . the parties and this Court would know what percentage of fault the court attributed to him and what percentage to [plaintiff's] father, or whether the $250,000 award represents [defendant's] proportionate share of some larger but unidentified measure of noneconomic damages." As we shall explain, defendant forfeited any right to apportionment by failing to raise the issue at trial.

Civil Code section 1431.2, which constitutes the heart of Proposition 51, states in pertinent part: "In any action for personal injury . . . based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount." (Civ. Code, § 1431.2, subd. (a).)[6] A defendant seeking a Proposition 51 offset must not only plead comparative fault as an affirmative defense, he

_____

the factual and legal basis for the court's decision regarding the principal controverted issues at trial as are listed in the request. (*Hellman v. La Cumbre Golf & Country Club* (1992) 6 Cal.App.4th 1224, 1230.) The only issues listed in the request relate to damages. Thus, any duty the trial court had to render a statement addressing the credibility of witnesses was limited to the issues relating to damages specified in defendant's request.

[6] "Non-economic" damages are such "subjective, non-monetary losses [as] pain, suffering, inconvenience, mental suffering, emotional distress, loss of society and companionship, loss of consortium, injury to reputation and humiliation." (Civ. Code, § 1431.2, subd. (b)(2).)

14

also must prove the comparative fault of others, and request that an allocation be made. (*Wilson v. Ritto* (2003) 105 Cal.App.4th 361, 366-369; *Kitzig v. Nordquist* (2000) 81 Cal.App.4th 1384, 1398-1399; *Conrad v. Ball Corp.* (1986) 24 Cal.App.4th 439, 444-445; Evid. Code, § 500.)

Here, defendant pleaded comparative fault as an affirmative defense, alleging on information and belief that plaintiff "as well as other individuals and entities as yet unknown to Defendant," were legally at fault for plaintiff's injuries, "and therefore any liability should be apportioned among Plaintiff and all other such parties . . . based upon their respective percentages of comparative fault or legal responsibility." Defendant, however, never raised the issue of apportionment at trial. He did not request that noneconomic damages, if any, be apportioned between himself and *any* other individual or entity, much less between himself and plaintiff's father. Nor did he argue how they should be apportioned. By failing to do so, defendant forfeited any right he may have had to apportionment. (See *Del Cerro Mobile Estates v. Proffer* (2001) 87 Cal.App.4th 943, 951.)

Defendant suggests the trial court's failure to issue a statement of decision somehow deprived him of the opportunity to request that noneconomic damages be apportioned. Not so. While defendant does not dispute that his request for a statement of decision is silent on the issue of apportionment, he claims that "[h]ad the trial court responded to [his] request for a statement of decision, [he] would have had the opportunity to file objections bringing the [issue] of apportionment . . . to the court's attention and requiring the court to address [it]."[7] Having failed to raise the issue of apportionment at trial or in his request for a statement of decision, defendant would have

---

[7] Pursuant to California Rules of Court, rule 3.1590(g), "Any party may, within 15 days after the proposed statement of decision and judgment have been served, serve and file objections to the proposed statement of decision or judgment."

15

had no basis to object to the trial court's proposed statement on the ground the trial court failed to apportion plaintiff's noneconomic damages between himself and plaintiff's father. Thus, defendant's assertion that he was denied the opportunity to request apportionment lacks merit. The law is clear. A defendant seeking apportionment of noneconomic damages under Proposition 51 must *plead* comparative fault as an affirmative defense, *prove* the comparative fault of others, and *request* that an allocation be made. (*Wilson v. Ritto, supra,* 105 Cal.App.4th at pp. 366-369; *Kitzig v. Nordquist, supra*, 81 Cal.App.4th at pp. 1398-1399; *Conrad v. Ball, supra,* 24 Cal.App.4th at pp. 444-445; Evid. Code, § 500.) Given those requirements, defendant's claim that he was entitled to defer the issue until after trial is without merit.

*Gordon v. Wolfe, supra,* 179 Cal.App.3d 162, relied on by defendant, does not dictate a contrary result. There, the court held that where a plaintiff seeks general and special damages, " 'it is the duty of the trial court, if it finds for plaintiff, to find separately the general damages and the several categories of special damages.' " (*Id.* at p. 167) In that case, the judgment was for a lump sum figure; therefore, neither the parties nor the court of appeal knew whether, or in what amount, the award was intended. (*Id.* at pp. 167-168) Thus, the court found "[w]ithout a statement of decision, the judgment is effectively insulated from review by the substantial evidence rule . . . ." (*Id.* at p. 168.) Consistent with the decision in *Gordon v. Wolfe,* here, the trial court found separately the general damages and the several categories of special damages, awarding plaintiff $44,800 in lost income, $10,296 in past and future medical expenses, and $250,000 in noneconomic damages.

Because defendant forfeited any right he may have had to apportionment of noneconomic damages under Proposition 51, the trial court's failure to issue a statement

16

of decision setting forth the basis upon which it awarded emotional distress damages did not, and could not, result in a miscarriage of justice.**8**

III

The Trial Court's Lost Income Calculation Must Be Reduced to Conform With The Evidence Presented At Trial

Defendant next contends the trial court's award for lost income must be reversed because it is based on speculation and conjecture and unsupported by substantial evidence. As we shall explain, $42,120 of the trial court's $44,800 lost income calculation is supported by substantial evidence.

At trial, plaintiff testified she was taken off work at various times from September 2005 until December 2007 due to her overwhelming anxiety and depression caused by the sexual abuse inflicted upon her by defendant and her father. She was taken off work by her primary care physician for six weeks during September and October 2005, and by Dr. Wiggen from May 2006 until November 2006, and from March 2007 until December 2007. During those periods, plaintiff, who has a degree in business management, was employed by Task Technologies as a technician for credit card equipment and was paid "maybe $13.00, $12.00 an hour." During his closing argument, plaintiff's trial counsel asked the court to award plaintiff $44,800 in lost income. In doing so, he noted plaintiff "testified as to her lost income, and it's more specifically detailed in the Trial Brief that we prepared and submitted prior to trial." That brief is not part of the record on appeal; thus, whatever additional argument is contained therein is not before us on appeal. The trial court awarded plaintiff $44,800 in lost income damages.

On appeal, defendant argues plaintiff "could not say what her rate of pay was when she took the leaves," "could [not] state how long she was on leave," and "offered

---

**8** Because we conclude defendant forfeited this issue, we need not consider plaintiff's claim that intentional tortfeasors are not entitled to apportionment under Proposition 51.

17

no evidence of how many hours a week or month she was working when she took any leave . . . ." Thus, according to defendant, "the trial court could only speculate on the amount of [her] lost income."

" 'Where the fact of damages is certain, the amount of damages need not be calculated with absolute certainty. [Citations.] The law requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation. [Citation.]' " (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 774-775.) Contrary to defendant's assertion, evidence was presented that plaintiff was working at Task Technologies during each of her three leaves of absence, and that she was paid approximately $12 or $13 an hour. Plaintiff's failure to recall her exact rate of pay or the precise dates of her absences did not preclude the court from calculating her lost income. (See *ibid.*) Moreover, in the absence of evidence to the contrary, the trial court reasonably could infer plaintiff was employed full-time. Thus, there is ample evidence to support a finding plaintiff lost income in the amount of $42,120 (81 weeks of missed work, multiplied by 40 hours per week, is 3,240 hours — 3,240 hours of missed work, multiplied by $13 an hour is $42,120 of lost income).

In an attempt to justify the additional $2,680 awarded by the trial court, plaintiff argues there is substantial evidence from which the trial court could have concluded she was entitled to "*future* wage loss for [plaintiff's] time spent in post trial psycho-therapy" in the amount $2,704. (Italics added.) In support of her argument, she relies on Dr. Wiggen's testimony that it would be in plaintiff's best interest to continue therapy on a weekly basis for another year. From that testimony, plaintiff posits that if she attended 52 counseling appointments, "it would be reasonable for the court to conclude based on experience that the appointments would occur during normal work hours and due to travel time to and from the appointments would result in [plaintiff] missing a half day of work to attend each appointment. At the rate of four hours lost per appointment,

18

[plaintiff] would lose 208 hours of work," which at a rate of $13 per hour, amounts to $2,704 in future wages after trial.

While plaintiff is entitled to recover loss of future income, such damages must be sufficiently certain.  (Civ. Code, § 3283; *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 799.)  Here, plaintiff presented no evidence she would be required to attend counseling in the middle of the workday.  And even assuming she would be required to do so, she fails to point to any evidence that would support a finding she would be required to miss four hours of work for each counseling appointment.  Indeed, the evidence presented suggests otherwise.  At the time of trial, plaintiff was working in Rocklin, hardly a remote location.  Dr. Wiggen testified that a typical counseling session lasts 50 to 60 minutes.  On this record, there is no basis to conclude plaintiff would be required to miss anything close to 208 hours of work to attend the additional 52 sessions of counseling recommended by Dr. Wiggen.

We need not consider plaintiff's assertion that the additional $2,680 may be explained as prejudgment interest under either Civil Code sections 3287, subdivision (a) or 3288, because there is no indication she ever moved for or requested the trial court to include such interest as an element of damages in the first instance.

Defendant does not assert he was prejudiced by the trial court's failure to issue a statement of decision setting forth the basis upon which it awarded lost income, and we are unable to discern how a statement of decision could have assisted defendant in challenging the sufficiency of the evidence.  Although defendant could have filed objections thereto, objections are allowed only to correct omissions and ambiguities in the statement of decision, not to reargue the evidence, as defendant seeks to do here. (See *Heaps v. Heaps* (2004) 124 Cal.App.4th 286, 292.)  Defendant does note that "[i]t is a mystery how the trial judge came up with [a] figure more than $3,000 higher . . . .  [¶] Of course, had the judge issued a statement of decision, this court could have some insight into his calculations."  As set forth above, it is plaintiff, if anyone, who is

19

prejudiced by the lack of a statement of decision on "how the trial judge came up with [a] figure" that exceeds $42,120. Absent a showing defendant was prejudiced in pursuing his appeal or that we are somehow hampered in our review of the same, the lack of a statement of decision on the issue of lost income does not warrant remand.

IV

Defendant Is Entitled to a Setoff From Plaintiff's Award of Economic Damages

Finally, defendant contends the trial court erred in failing to offset his parent's pretrial settlement against plaintiff's special economic damage award pursuant to section 877. As we shall explain, the facts relevant to a determination of this issue are undisputed, and the only issue that remains is whether section 877 applies, a legal issue we must decide for ourselves. Accordingly, remand for the preparation of a statement of decision is not required. Having considered the issue, we shall conclude section 877 does apply, and the amount of special economic damages defendant must pay plaintiff must be reduced from $55,096 to $4,752.

We begin our analysis by addressing the timing of defendant's request that he receive a setoff from plaintiff's award of economic damages. Although defendant failed to raise this issue at trial, there is authority for allowing the issue of an offset to be raised for the first time in objections to a proposed statement of decision. (*Knox v. County of Los Angeles* (1980) 109 Cal.App.3d 825, 834-835 (*Knox*).) In *Knox*, the court reasoned "[i]t was appropriate for [defendant] to defer this issue until the court had indicated that [he was] to be found liable. There was no occasion to consider an offset until liability was found; and there is ample precedent for deferring the offset issue until after the determination of the merits." (*Id.* at p. 834.)[9] Had the trial court issued a statement of

---

[9] The same cannot be said with respect to allocation of noneconomic damages under Proposition 51, which is an affirmative defense and is inextricably intertwined with the issue of defendant's own liability for plaintiff's injuries. (*Ante,* pp. 14-15.)

20

decision in this case, defendant could have raised the issue of an offset in his objections thereto. Nevertheless, we need not remand the matter for the preparation of a statement of decision because there is no factual dispute for the trial court to resolve. (See *Enterprise Ins. Co. v. Mulleague* (1987) 196 Cal.App.3d 528, 540 ["if there is no factual dispute, there is nothing to inform the appellate court about except the law and on questions of law the reviewing court must decipher the law for itself"].) As set forth above, plaintiff concedes she was paid $275,000 in settlement of her claims against defendant's parents. The only remaining issue is whether section 877 applies -- a legal issue we must decide for ourselves. (*Enterprise Ins. Co. v. Mulleague, supra*, at p. 540.)

Turning to the merits, plaintiff sued defendant for sexual battery, and defendant's parents for negligence. Plaintiff claimed defendant's parents failed to reasonably care for, supervise, direct, oversee, and protect her from the harm inflicted upon her by defendant. Prior to trial, plaintiff settled with defendant's parents for $275,000 in exchange for a general release.

Section 877 mandates, "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith before verdict or judgment to one or more of a number of tortfeasors claimed to be liable for the same tort, . . . it shall have the following effect: [¶] (a) It shall not discharge any other such party from liability unless its terms so provide, but it *shall reduce the claims against the others in the amount stipulated by the release, the dismissal or the covenant, or in the amount of the consideration paid for it whichever, is the greater.* [¶] (b) It shall discharge the party to whom it is given from all liability for any contribution to any other parties. . . ." (Italics added.) Because, as discussed above, noneconomic damages are no longer joint obligations after Proposition 51, the setoff contemplated under section 877 applies only to economic damages. (*Espinoza v. Machonga* (1992) 9 Cal.App.4th 268, 272.) In addition, "a nonsettling defendant [is] entitled to a setoff from plaintiff's award of economic damages in the amount of settlements paid prior to trial by other defendants,

21

*despite the jury's finding that the settling defendants had no fault for plaintiff's injuries.*" (*Poire v. C.L. Peck/Jones Brothers Construction Corp.* (1995) 39 Cal.App.4th 1832, 1837 (*Poire*), italics added.) "This satisfies the fundamental goals of section 877, to preclude a double recovery arising out of the same wrong and encourage settlements." (*McComber v. Wells* (1999) 72 Cal.App.4th 512, 516-517.) As we observed in *Reed v. Wilson* (1999) 73 Cal.App.4th 439, 444, "the offset provided for in section 877 assures that a plaintiff will not be enriched unjustly by a double recovery, collecting part of his total claim from one joint tortfeasor and all of his claim from another."

Plaintiff argues section 877 is inapplicable here because defendant and his parents were not "claimed to be liable for the same tort," as required by section 877. Plaintiff observes, "The judgment against [defendant] was for his multiple intentional torts by way of his sexual assaults against [plaintiff], not for negligence as was claimed against his parents . . . ." Plaintiff misapprehends the meaning of the phrase "the same tort" as used in section 877. Separate causes of action are not necessarily separate torts. "[T]he key is that the tortious acts of the codefendants operate to produce a singular injury, irrespective of the legal theories on which the plaintiff bases his or her claims in framing the complaint." (*Oliveira v. Kiesler* (2012) 206 Cal.App.4th 1349, 1361.) Here, plaintiff claimed defendant and his parents were liable for the same injuries. That is sufficient for purposes of section 877. (*Oliveira v. Kiesler, supra*, at p. 1361.)

Plaintiff also asserts the application of section 877 conflicts with section 875, subdivision (d), which provides, "There shall be no right of contribution in favor of any tortfeasor who has intentionally injured the injured person." The court in *Wouldridge v. Zimmerman* (1971) 21 Cal.App.3d 656, 658-659 persuasively rejected this argument, explaining: "Sections 877 and 875 were adopted at the same time (Stats. 1957, ch. 1700) and as part of a comprehensive statutory plan. Thus there is even more reason than in the usual situation to seek a construction which will reconcile the several provisions, and avoid a conflict obviously not intended by the Legislature. [¶] It is only in a strained

sense that the *pro tanto* reduction approximates contribution. The purpose of the rule requiring such reduction is to avoid the double recovery and unjust enrichment which a plaintiff would enjoy if he were able to collect part of his total claim from one, and all from another [citations]. [¶] Nor is there true conflict between sections 875 and 877. The former is designed only to establish a right of contribution among joint tortfeasors equally liable to a plaintiff. It abrogates the common law rule and recognizes equitable considerations to be applied only among joint tortfeasors themselves. Section 877, on the other hand, considers only the right of the plaintiff against the several tortfeasors. 'The "equities" . . . considered [by section 875] are those of the wrongdoers among themselves . . . .' " Moreover, by its terms, section 875 applies only to contributions among joint tortfeasors after a judgment has been satisfied. (*Wouldridge v. Zimmerman, supra*, at p. 659.) It has no application to setoff rights arising from the pretrial settlement in the instant case. (*Ibid.*)

Accordingly, we apply the well-established formula for calculating the offset developed by the court in *Espinoza v. Machonga, supra,* 9 Cal.App.4th at page 277. The portion of the settlement which may be setoff from a judgment of economic damages is determined by application of the percentage of the economic damages award in relationship to the total award of damages. (*Ibid.*) Here, plaintiff is entitled to $52,416 for economic damages ($42,120 for lost wages, plus $10,296 for past and future medical expenses) which equals 17.332416 percent of the total $302,416 modified award.[10] Defendant is entitled to offset 17.332416 percent of the $275,000 pretrial settlement. This equals $47,664. Consequently, the judgment must be modified to reflect the $47,664 offset, which reduces the total economic damage award to $4,752.

---

[10] These figures reflect the reduction in lost income previously discussed.

Plaintiff suggests reducing defendant's liability for plaintiff's economic damages to $4,752 "smacks of inequity." Unlike Proposition 51, however, section 877 is not concerned with limiting a defendant's liability in direct proportion to his percentage of fault. Rather, liability is joint and several. Thus, the fact that defendant's proportionate share of responsibility for the economic damages may be far less than his proportionate share of responsibility for plaintiff's injuries is irrelevant. (*See Poire, supra,* 39 Cal.App.4th at pp. 1837-1840 [holding nonsettling defendant entitled to a setoff from plaintiff's award of economic damages despite jury's finding settling defendants had no fault for plaintiff's injuries]; see also *McComber v. Wells, supra,* 72 Cal.App.4th at pp. 516-517 [holding jury's finding settling defendants not negligent irrelevant for purposes of section 877 setoff and affirming setoff reducing plaintiff's economic damage award to zero].)

DISPOSITION

The judgment against defendant is modified to reflect the total award of special economic damages (lost income, plus past and future medical expenses) is $4,752 and the total judgment is $254,752. The amount of general noneconomic damages remains the same. Each party shall bear their own costs.


    BLEASE        , Acting P. J.


I concur:


    HOCH        , J.

24

Robie, J. concurring


I fully concur in this opinion.  I write separately because I recently also concurred in *Wallis v. PHL Associates, Inc.* (2013) 220 Cal.App.4th. 814 in which the court reversed for failure to issue a statement of decision.  *Wallis* relied on *Miramar Hotel Corp. v. Frank. B. Hall & Co.* (1985) 163 Cal.App.3d 1126.  In *Wallis* the parties did not raise the applicability of the provision of our Constitution (Cal. Const., art VI, § 13) or Code of Civil Procedure section 475.  Nor apparently did the parties in the many cases following *Miramar* as the instant opinion notes. Since the issue was not raised in *Wallis*, whether a miscarriage of justice existed in that case was not decided.  The lesson I have learned is that *per se* rules should be looked upon critically, as stated by Presiding Justice Spencer in *Miramar*.  (*Miramar Hotel Corp. v. Frank. B. Hall & Co.*, *supra*, 163 Cal.App.3d at pp. 1130-1131.)


       ROBIE          , J.


1